IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| STEPHEN F. BRENNING,         § | |
|     PLAINTIFF,         § | |
| § | |
| VS.         § | CIVIL ACTION NO. 4:05-CV-369-Y |
| § | |
| JO ANNE B. BARNHART,         § | |
| COMMISSIONER OF SOCIAL SECURITY,   § | |
|     DEFENDANT.         § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff Stephen F. Brenning brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act. Brenning applied for disability benefits on March 20, 2002, asserting that his disability commenced October 3, 2000. (Tr. 59). He met the insured status requirements at all times relevant to the Commissioner's decision. (Tr. 67).

After his application for benefits was denied initially and on reconsideration, Brenning

requested a hearing before an administrative law judge (the "ALJ"), and ALJ Randolph D. Mason held a hearing on January 7, 2004 in Fort Worth, Texas. (Tr. 312). Brenning was represented by counsel. On January 14, 2004, the ALJ issued a decision that Brenning was not disabled because he had the residual functional capacity (RFC) to perform a modified range of light work activity,[1] including his past relevant work. (Tr. 16-21). The Appeals Council denied Brenning's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 2**

the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its

judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

Brenning contends that the ALJ misused evidence in reaching his decision and failed to fully and fairly develop the record.

D.   ADMINISTRATIVE RECORD

1.   Medical History

On May 20, 1999, Brenning underwent triple-vessel coronary artery bypass surgery. (Tr. 118-36). Brenning had additional surgery in June 199 to drain an infection in his leg. (Tr. 111-13). He initially did well following his bypass surgery, but in September 2000, he complained of tightness in his chest and shortness of breath on exertion. (Tr. 160).

During a stress test administered in September 2000, Brenning achieved 10.1 METs[2] with no ischemic changes, but the test was discontinued due to shortness of breath. (Tr. 143). A cardiac catheterization performed October 3, 2000, showed a totally occluded left anterior descending artery and left internal mammary artery graft, with severe disease of the right coronary artery. (Tr. 155-58). Cardiologist Guduru Reddy, M.D., attempted to place a stent at the site of the occlusion, but was not successful. (Tr. 157, 176).

---

[2] The intensity of physical activity is measured by the metabolic equivalent, or MET, level: Physical activity that burns more than 6 METs is considered vigorous-intensity activity. CENTER FOR DISEASE CONTROL AND PREVENTION, PHYSICAL ACTIVITY FOR EVERYONE: PHYSICAL ACTIVITY TERMS (Mar. 22, 2006), http://www.cdc.gov/ nccdphp/dnpa/physical/terms/index.htm.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 4**

Brenning was referred to cardiologist Lorren Mott, M.D., in August 2001 for evaluation of intermittent symptoms of shortness of breath and fatigue. (Tr. 172). An echocardiogram performed August 24, 2001, showed normal left ventricular systolic function. (Tr. 171). Brenning achieved 10.1 METs during another exercise stress test in August 2001, with no ischemic changes and overall ventricular systolic function assessed in the lower limits of normal. (Tr. 170). Brenning reported dyspnea, but no chest discomfort, during the test. (Tr. 170).

Brenning underwent a consultative evaluation with internist Beena Dave, M.D., on June 19, 2002. Brenning complained of chest pain radiating into his jaw and neck, shortness of breath, leg cramps, and back pain. (Tr. 176-77). Diagnostic studies from March 1999 confirmed degenerative disc disease along Brenning's cervical spine, and Brenning also stated that he had a bulging disc along his lumbar spine. (Tr. 137-39, 177).

On examination, Dave noted that Brenning's neck movement was not restricted and he had no local tenderness, but exhibited restricted flexion range-of-motion in his back. (Tr. 178). His gait was steady, and he was able to perform toe, heel, and tandem walking. Brenning was able to get on and off the examination table and move about the examining room. Fine and dextrous finger control was also assessed as normal. A neurological evaluation was normal, with motor power of 5/5 and no sensory deficits. Straight leg raising was negative to ninety degrees in a seated position, and restricted to 60-75 degrees in the supine position. (Tr. 178). Dave assessed a sitting tolerance for a minimum of forty-five minutes; a standing tolerance of forty-five minutes, with walking limited to less than two blocks; lifting up to thirty pounds; and good fine finger control. (Tr .179). Dave also noted that Brenning did not require an assistive device for ambulation.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 5**

Brenning also saw neurosurgeon Joe Ellis Wheeler, MD., in June 2002. (Tr. 267). Brenning complained of progressively worsening bilateral arm and hand pain, mid- and low-back pain, and bilateral pain in his hips and legs. Based on a physical examination and a review of magnetic resonance imaging (MRI) studies of Brenning's cervical and lumbar spine, (Tr. 291-92), Wheeler diagnosed disc degeneration and displacement at C3-C7, L4-L5, and L5-S1, with cervical cord compression at C3-C4, C4-C5, and C6-C7, and osteophyte formation at C3-C4 and C4-C5. Wheeler discussed cervical and lumbar surgery options with Brenning, but Brenning thought he could live with his condition for the time being. (Tr. 267). Wheeler later clarified that Brenning was not considered a surgical candidate due to his cardiac condition. (Tr. 266).

Brenning was hospitalized for three days in August 2002 for symptoms of unstable angina. (Tr. 205-10). An electrocardiogram (ECG) revealed no ischemic changes, and his hospital stay was unremarkable. Brenning exercised nine minutes during a treadmill stress test, achieving a peak workload of 10.1 METs without reproducing symptoms of angina or signs of ischemia. The test was terminated because of back and leg discomfort. (Tr. 206). Given Brenning's exercise tolerance without provoking symptoms of angina or ishecmic changes, Mott recommended resuming Brenning's medical therapy and advancing his activities. (Tr. 207).

In November 2002, treating physician Lorren Mott noted that Brenning's coronary artery disease was stable on medical therapy, and there were no recent symptoms of angina. (Tr. 294). Brenning was described as active, without any significant limitation in his activities from a cardiac standpoint. Mott opined that chronic low back pain was Brenning's primary limitation. (Tr. 294).

2.       Administrative Hearing

Brenning was born December 21, 1941. (Tr. 315). He completed high school and one year of college, and has work experience as a furniture refinisher, a car salesman, a loan officer, and a regional manager. (Tr. 315, 321-25). He also worked on a part-time basis in 2001 for his brother-in-law, who operated a piano repair shop, but Brenning testified he was able to take breaks from that job and rest when necessary . (Tr. 317).

Brenning testified that his back problems caused him more difficulty than his heart disease. (Tr. 327). The degenerative discs in his back limited his ability to walk, although his physicians had encouraged him to walk for exercise. (Tr. 327). Brenning testified that his wife cleaned the house, but he cooked for his father, did the laundry, and shared grocery shopping responsibilities with his wife. (Tr. 328). Brenning testified that he had a workshop where he built furniture, and he used a riding lawnmower to do yard work. (Tr. 328). He testified that he was able to tolerate two or three hours of activity each day, but did not think he could perform any job on a full-time basis because of pain and a lack of stamina. (Tr. 330-31).       He delivered food for the charity Meals-on-Wheels, but had to rest between deliveries. (Tr. 335). He also volunteered at a local food pantry three days a week. (Tr. 336).

Brenning testified that sitting for prolonged periods caused low back pain and leg pain. Standing and walking would help, but reclining provided the most relief because it reduced the pressure on his spine. (Tr. 331). Standing for prolonged periods caused numbness in his legs. (Tr. 332). He had seen a neurosurgeon, but was told that he was not a surgical candidate because of his heart problems. (Tr. 333).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 7**

Brenning's wife testified that her husband had good days and bad days, but she did not think his condition allowed him to be a sufficiently reliable employee to perform full-time work. (Tr. 339-40). She also testified that Brenning did more than he should because he did not like remaining inactive. (Tr. 340).

Vocational expert Barbara Dunlap testified that Brenning's past relevant work as a loan officer was a skilled job that usually required sedentary exertion, but was light work as Brenning described it. (Tr. 341). His jobs as a car salesperson and a regional manager were also skilled work requiring light exertion. (Tr. 341-42). Furniture refinishing was skilled work that required medium exertion. (Tr. 342). The ALJ asked Dunlap to consider the following hypothetical:

> Assume an individual with a high school education with a year of college, who at the time in question was 58 years of age, with past work as you described as a salesman, loan officer, and regional manager. And assume a Residual Functional Capacity for only light work, but needing frequent opportunities to sit or stand throughout the workday. Would such an individual be capable of performing any of the past work?

(Tr. 342). Dunlap testified that a person with those hypothetical limitations could work in car sales, as a loan officer, or as a regional manager. (Tr. 342). Dunlap testified that there were no jobs that would allow the employee to lie down at the job site. (Tr. 343).

3.     ALJ Decision

The ALJ found that Brenning had not engaged in substantial gainful activity, and in particular, found that Brenning's work after October 2000 was not performed at the level of substantial gainful activity. (Tr. 17). The ALJ found that Brenning had a severe combination of impairments based on his degenerative disc disease and history of heart problems; however, the ALJ found that Brenning had no impairment or combination of impairments that met or medically

equaled any listed impairment. (Tr. 19).

After considering the objective evidence and Brenning's subjective complaints, the ALJ concluded that Brenning retained the residual functional capacity to perform a full range of work at the light exertional level, except he required frequent opportunities to sit or stand. (Tr. 19). The ALJ accepted the vocational expert's testimony that Brenning's previous work as a car salesperson, loan officer, and regional manager did not exceed his residual functional capacity. Because Brenning was capable of performing his past relevant work, the ALJ terminated his analysis at Step Four of the sequential evaluation process and found that Brenning was not disabled or eligible for disability insurance benefits. (Tr. 21).

E.   DISCUSSION

Brenning contends that the ALJ failed to fully and fairly develop the record and engaged in a selective review of the record in assessing Brenning's residual functional capacity. More specifically, Brenning complains that the ALJ misused or took certain statements out of context from the consultative examiner's reports and progress reports from Brenning's treating cardiologist. The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits, and if that duty is not satisfied, than the ALJ's decision is not substantially justified. *Ripley v. Chater*, 67 F.3d 552, 557 (1995). Reversal of the decision, however, will be appropriate only if the claimant demonstrates prejudice. *Id.*

Brenning asserts that the ALJ erroneously stated that Dave had observed no restriction in Brenning's back and neck movements because that statement conflicts with Dave's consultative evaluation report. Brenning also contends that the ALJ ignored his well-documented heart problems

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

by misusing Motto's recommendation that Brenning advance his activities and Mott's statement that Brenning's primarily limitation was his degenerative disc disease, not his cardiac condition.

Although the ALJ erred in summarizing Dave's findings with respect to range-of-motion restrictions in Brenning's neck and lumbar spine, Brenning does not demonstrate that this inaccuracy undermines a residual functional capacity assessment that is compatible with Dave's opinion of Brenning's physical limitations. In addition, Brenning fails to show that the ALJ misapplied or misinterpreted reports offered by the treating cardiologist. Mott advised an increase in Brenning's activities, which does not contradict the ALJ's determination that Brenning retained the ability to perform a modified range of light work. Brenning's assertion that Mott intended this advance in activities to be undertaken with clinical supervision also presents no basis for disturbing the ALJ's determination. The medical records reflect that Brenning has received regular follow-up care for his cardiac condition, which has stabilized with the use of medication. And as correctly noted in the ALJ's decision, Mott also stated that Brenning's primary limitations emanated from his back condition, not his cardiac condition. Even Brenning acknowledged during the hearing that his back caused more problems for him than his heart condition did.

Brenning cites several cases that overturn administrative decisions when the ALJ takes a selective approach to the evidence, but a review of these cases reflects more egregious departures from the record than those alleged or established in the present case. *See Ripley*, 67 F.3d at 557; *Bagwell v. Barnhart*, 338 F. Supp. 2d 723 (S.D. Tex. 2004); *West v. Sullivan*, 751 F. Supp. 647 (N.D. Tex. 1990); *Rains v. Secretary of Health and Human Servs.*, 731 F. Supp. 778 (E.D. Tex. 1989). Moreover, the ALJ noted that Brenning was able to perform a variety of daily activities,

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 10**

including caring for an ailing parent, volunteering for charitable purposes, building furniture, and doing yard work, despite his combined impairments. (Tr. 18-19). *Reyes v. Sullivan,* 915 F.2d 151, 155 (5th Cir.1990) (per curiam) (approving administrative consideration of claimant's daily activities when deciding claimant's disability status). Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence, and that determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991); *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986). The ALJ did not doubt that Brenning experienced pain and some degree of functional limitation, but not to the disabling degree alleged. (Tr. 19). Brenning has not shown that deference should not be given to the ALJ's assessment, nor has he shown a lack of substantial evidence or legal error that would justify reversing the Commissioner's decision.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until July 5, 2006. The United States District Judge need only

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until July 5, 2006 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JUNE 13, 2006.

/s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE